Desmond, J.
The question of law is: did the Workmen’s Compensation Board have power in 1955 to reopen this workmen’s compensation case wherein it had in 1944 dismissed the claim as noncompensable Í
Claimant appeals as of right from a unanimous Appellate Division, Third Department, order which reversed an award by the Workmen’s Compensation Board for total disability due to silicosis. The Appellate Division’s order dismissed the claim. Although the ‘ ‘ Special Fund for Reopened Cases ’ ’ appeared here as a respondent through its attorney, it was agreed on the argument that if the award reversed by the Appellate Division be sustained by us that award should run not against the Special Fund but against the employer and the State Insurance Fund as insurance carrier.
On March 24, 1944, at a time when then article 4-A of the Workmen’s Compensation Law provided for workmen’s compensation as to silicosis for total disability only and not for partial disability (see present § 3, subd. 2, col. 1, No. 28), this claimant filed her claim. She had been working for 15 years for appellant employer Levitón in a silica dust exposure job. Because of her physical condition she had been forced to give up that work a few days before she filed this claim. At about the same time claimant’s own physician Dr. Radetsky filed with the board a written report known as “ Attending Physician’s 48 Hour Preliminary Report ” in which he stated that claimant was suffering from “Bilateral diffuse advanced silicosis”. Elsewhere in that report Dr. Radetsky stated as to the probable duration of treatment: “Indefinite perm.” and stated that claimant was not working at the time of the report and that the probable duration of disability was indefinite and that claimant at that time was not able to work. Filed with the board in April, 1944 was a report by a Dr. Goldner who had examined claimant for the carrier and who reported that the obvious diagnosis was silicosis and that claimant was disabled at the time of the report and probably should never again do work involving exposure to dust or silica. Then the Workmen’s Compensation Board arranged for an examination and report by a Dr. Edgar Mayer, a member of its impartial chest panel. Dr. Mayer made a report which described * ‘ a widespread small nodular dissemination of silicosis throughout both lungs *364 Dr. Mayer’s conclusion, however, years later admitted by him to have been erroneous as to permanency, was that claimant was suffering from “ 2nd stage silicosis ” but was not disabled and could do light work in a nondusty job. These written reports and no more were before the workmen’s compensation referee when he held hearings on the claim on June 28, 1944, and July 19, 1944. Claimant, who appeared at those hearings without an attorney or other representative, was merely asked how long she had worked for this employer and when she stopped work. She said that her doctor had told her she could work as long as there was no dust. On that record without any appearance by physicians the referee held that while claimant was suffering from silicosis as an occupational disease she could have no compensation under the existing statute because her disability was not total. The case was, therefore, closed. As was found long afterwards and is not now disputed, she was actually totally disabled at that time.
Several months later, on November 24, 1944, claimant, still without an attorney, filed an application for a reopening of the case in which she stated that she had a partial permanent disability and was unable to work. In that application she specifically requested a new hearing at which testimony of the physicians should be taken and stated that at the earlier hearing she had asked that her doctor be present to testify for her but that her request had been denied. With the application she submitted a report by her physician Dr. Badetsky in which Dr. Badetsky described her ailment, stated there was a permanent defect and a 50% “loss of use ” and stated that the ailment was industrially caused and that claimant could do only light dustless work as of August 15, 1944. However, despite the presence in its files of these reports showing a condition of silicosis industrially caused and obvious disability therefrom, the board declined to grant a hearing in which testimony would be taken but instead affirmed its former finding of partial disability only and closed the case without award as of December 15,1944.
In August, September and November, 1954, a Dr. Dorfman on behalf of claimant submitted to the board a series of reports concerning■ claimant’s condition in which he described her symptoms and stated that the condition was permanent and disability total. The case was then reopened and restored to *365 the calendar with a direction that claimant be examined by the board’s impartial panel of chest examiners. As of March 28, 1955 the same Dr. Edgar Mayer (as a member of the State Board of Chest Examiners) who had submitted reports in 1944 sent in a new written report in which he now concluded that claimant was totally disabled. Then, for the first time the board took oral testimony. Dr. Mayer when called as a witness stated that on re-examining the X rays and other records which had been on file in 1944 he was now convinced that claimant had been “ totally disabled ” at that time. There is no doubt that Dr. Mayer meant simply that in 1944 he had made a wrong diagnosis. Testimony was taken also at the 1955 hearings from Dr. Badetsky, claimant’s former physician, who had apparently not treated or examined her since 1944. Under date of July 18, 1955, an attorney representing claimant wrote a letter again requesting a reopening and rehearing.
Dr. Badetsky’s testimony was that at some of the times he saw claimant in 1944 she was totally disabled but that he had expected that she would be able to do some light work later. Dr. Dorfman, too, gave testimony at the 1955 hearings that claimant, beginning some time in the Summer of 1944, was totally disabled but that at other times she was only partially disabled, whatever that may mean. He was clearly of the opinion, however, that as of the 1955 hearings claimant was totally disabled. Dr. Taylor at the 1955 hearings established that claimant’s silicosis condition was industrially caused. Apparently there were no further hearings until May, 1956 when Dr. Mayer gave the testimony as to his earlier mistake to which we have already referred. The board then made a decision as of October 31, 1956, which resulted in the award which was afterwards reversed by the Appellate Division and which is before us on this appeal. The board’s findings were that, on March 12, 1944, claimant became totally disabled as a result of silicosis, an occupational disease, and as a result she was entitled to compensation at the rate of $22.33 a week from March 20, .1944 up to the then statutory total of $7,500. That award ran against the State Insurance Fund, one of our present respondents, which was the insurance carrier of employer Levitón in 1944. There was in that 1956 decision an additional or secondary award against the Special Fund for Beopened Cases which additional award is now out of the case.
*366 The employer and State Insurance Fund as carrier appealed to Appellate Division, Third Department, and that court unanimously reversed and dismissed the claim. The basis of the reversal was section 123 of the Workmen’s Compensation Law which, while providing that the jurisdiction of the board as to each case shall be continuing, says that 1‘ no claim for compensation or for death benefits that has been disallowed after a trial on the merits, or that has been otherwise disposed of without an award after the parties in interest have been given due notice of hearing or hearings and opportunity to be heard and for which no determination was made on the merits, shall be reopened after a lapse of seven years from the date of the accident or death.” It is true, as the Appellate Division pointed out, that section 25-a contemplates certain situations where a claim may be reopened more than seven years after accident or death. However, again as the Appellate Division pointed out, section 123 clearly says that no claim disallowed after a trial on the merits shah be reopened after seven years. We agree with the Appellate Division that even though no oral testimony was taken in 1944, nevertheless there was within the contemplation of the Workmen’s Compensation Law a trial on the merits at that time. However, that need not dispose of this case.
Matter of Roder v. Northern Maytag Co. (297 N. Y. 196) points the way for reversal here. In Boder the claim was disallowed on the ground that claimant had failed to establish causal connection. Not quite seven years after the death of her husband claimant applied for reopening for the purpose of introducing medical proof of causation. The board denied it on the ground that sufficient medical evidence had already been considered. This was in fact erroneous since there had been no such evidence. In March, 1943, seven and one-half years after the death, the board reopened the Boder case and the question on the appeal was as to whether the board had such power after the lapse of more than seven years. We held that such jurisdiction existed. Our rationale was that in reopening in 1943, more than seven years after the death, the board was merely reconsidering its previous denial of an application for rehearing made less than seven years after the death. No reason appears why the same holding should not be made here. In the present case an application for a rehearing was made and *367 denied much less than seven years after injury.- So it was in Roder. In the present case, just as in Roder, the board because of a mistake refused reopening within the seven years. In Roder the mistake made was that the board erroneously thought it had taken a certain kind of medical evidence. In the present case the board’s mistake was in the erroneous opinion of its own impartial expert. I think it could also be said that the board here made a mistake when it originally denied reopening in 1945 in that it then thought that it had before it unequivocal medical testimony of nontotality. The 1944 and 1945 medical statements were not really conclusive on the factual question as to whether claimant’s disability at that time was total.
Matter of Roder v. Northern Maytag Co. (297 N. Y. 196, supra) clearly holds that when application for reopening is made within the seven years the board, after seven years, may reconsider its denial. In Roder, in the interests of justice we treated what the board did as a reconsideration after seven years of a petition for reopening made within the seven years.
Section 123 of the Workmen’s Compensation Law, above cited, in terms forbids a reopening more than seven years after accident or death where there has been a disallowance on the merits after hearings. However, that section is mainly used to prevent a brand new attempt to prove up a stale claim. It has little relevance to a situation where the board by refusing to accept proffered oral medical testimony fell into what after-wards turned out to be a plain error. Although the board did not in the present case say in so many words that the 1955 reopening was a reconsideration of the 1944 denial of reopening, it was such in fact or in justice it should be so considered. Section 123 of the act says and has always said that the board’s jurisdiction over a case “ shall be continuing ”.
The order of the Appellate Division should be reversed and the award of the Workmen’s Compensation Board reinstated, with costs in this court and in the Appellate Division.