■ In the Matter of the Claim of ANTON TRGO, Respondent, v. HARRIS STRUCTURAL STEEL CORPORATION, Appellant. WORKMEN'S COMPENSATION BOARD, Respondent.— Appeal by a self-insured employer from a determination of the Workmen's Compensation Board which reversed the decision of the Referee and awarded claimant 50% partial disability with compensation payments to continue. On June 17, 1955 while employed as a painter by appellant, claimant fell from a scaffold a distance of about 40 feet to the ground. As a result of the fall, he sustained physical injuries consisting of a fracture of the left acetabulum, concussion of the brain, contusions of the left thorax and abdomen and lacerations of the chin and right arm. He was hospitalized for a period of 107 days. Claimant contends that as a residual of his physical injuries, he suffered a traumatic conversion hysteria. The Referee awarded claimant a 66⅔% schedule loss of use of the left leg and closed the case. Claimant appealed to the board which found that his disability was "of a non-schedule type [which did] not lend itself to proper disposition on a

schedule loss basis alone". "Due to the nature of the injury and the effects thereof" it further found that "claimant has a 50% partial disability". Accordingly, it rescinded the decision of the Referee, made a reduced earnings award to claimant and directed the employer to continue payments as long as there was no change "in condition or greater earnings". The issue on this appeal is whether or not, as the basis of a disability not amenable to a schedule award, there is substantial evidence to sustain the board's findings that claimant suffered a causally related continuing traumatic neurosis. On October 22, 1957 the Referee found causally related disability subsequent to July 26, 1956. On March 5, 1958 the board affirmed his decision. In so doing it credited the evidence of claimant's attending physician, Doctor Sherman, and of Doctor Berg, a neurologist, who had examined him on September 11, 1957. Its decision also referred to the countervailing testimony of Doctor Lo Verme, a neurologist, and of Doctor Ludlum, an orthopedist, both of whom had examined claimant for the employer. The appellant took no appeal to this court from the board's decision. On June 4, 1958 Doctor Sciortino, an examining physician of the board, filed a report of his examination of claimant of the same date. He found the gross neurological examination essentially to be negative, the defects of his left leg to be permanent and equal to a schedule loss of two thirds of that leg. On the basis of additional reports by Doctor Sherman and Doctor Berg, claimant then requested an examination by a Board of Consultants. On September 3, 1958 such was conducted by Doctors Rattner and Kelly, compensation examining physicians of the respondent. Their report states that "Gross neurological examination is negative". Their conclusion was "that there is a schedule loss of use of ⅔ of the left leg which is permanent". After a hearing before the Referee held on January 27, 1959 Doctor Sherman and Doctor Berg were recalled as witnesses and a report dated January 22, 1959 by Doctor Gelb, a psychiatrist associated with the Institute for the Crippled and Disabled to which claimant had been referred for rehabilitative treatment, was also submitted. This report states: "His [claimant's] psychiatric diagnosis is anxiety reaction and depressive reaction subsequent to a severe physical injury" and that "psychotherapy has been necessary as part of his rehabilitation program". Doctor Sherman testified to "a growing belief * * * that this man was exhibiting a growing neurosis". Doctor Berg reiterated his prior opinion that claimant had a "severe psychiatric disability * * * directly causally related to his head injury". At the earlier hearing Doctor Lo Verme had testified, in conformity with his filed report, that claimant had no neurological disease or trauma resulting from the accident. His conclusion was that claimant was protracting his symptomatology to delay his deportation — a Yugoslav, he had entered the United States illegally — or to further his pending third-party suit. The record contains other pro and con reports of attending and examining physicians which antedate the board's decision of March 5, 1958. All in all the conflicting medical evidence on the subjects of the claim of post-traumatic psychiatric disturbance and its genuineness presented questions of fact which were within the province of the board to determine. It was not compelled to accept the medical views of its examining physician and Board of Consultants. (*Matter of Cioffi* v. *Crow Constr. Co.*, 284 App. Div. 1076; *Matter of Arbanos* v. *Du Pont de Nemours & Co.*, 275 App. Div. 881.) Decision and award unanimously affirmed, with costs to the Workmen's Compensation Board. Present — Coon, J. P., Gibson, Herlihy, Reynolds and Taylor, JJ.